### Euclid C. Thayer *v.* Ardelia J. Thayer.

The statute (Rev. Stat. Chap. 137, § 16) which empowers the Supreme Court to make such an allowance to the wife out of the estate of the husband, to prosecute or defend gainst any petition for divorce or separate maintenance in case she has no property of her own, as they may think proper, requires that the allowance should be made out of the estate of the husband, and not out of that of his next friend, in case he prosecutes his petition for divorce by his next friend.

The respondent in a divorce petition having made an affidavit, stating that she believed her husband had pecuniary means of his own, wherewith to defray the expenses of the suit, but producing no further evidence thereof, and the father of the husband, on the other hand, having made an affidavit, stating that the husband was a minor, unable to work by reason of disease, supported by him, and without money or property of his own out of which he could make any allowance or payment to the respondent ; it was *held,* that under these circum-

stances, an order on the husband to make an allowance to his wife to defend against his petition for divorce, would not be reasonable or proper; but that, if the respondent would satisfy the court that she had important witnesses, whose attendance she could not procure for the want of means, the trial of the petition should be delayed, to give her time to obtain means, if she could, to procure their attendance.

An application for an order upon the petitioner in a petition for divorce, (he being the next friend of the respondent's husband,) to produce the respondent's husband in court at the time of the trial of the petition, *refused,* at least until the court could determine, upon the trial of the petition, whether his presence was desirable or necessary.

A deposition otherwise admissible in evidence may be used in the trial of a cause, although the deponent is himself in court at the time it is produced, and could be put upon the stand by the parties offering his deposition if they so desired.

Where a party is alleged to be incapable of contracting a marriage by reason of insanity, the court will form their opinion as to his mental condition from the testimony of witnesses who have been long acquainted with him and that of medical experts, in preference to any personal examination.

Where one E. C. T. petitioned for a decree declaring the marriage of his son, O. M. T., a minor, with one A. J., null and void, and divorcing him from the bond of marriage with said A. J., it was *held,* that the court, being satisfied by the evidence. that the said O. M. T. was not of sound mind at the time of his marriage with the respondent, would not grant her application to postpone pronouncing its decree in order to allow the said O. M. T. to be produced before them, her application being based on the claim of his being of sound mind at the time of the marriage and not of any subsequent recovery, and a physician's affidavit having been presented which stated that he could not be produced in court without suffering injury.

A lunatic or a person *non compos* is duly represented in a petition for divorce by the person who, being authorized by the statute, (Statutes, Chap. 706,) petitions in his behalf. Personal notice to him of the pendency of the petition, although expedient in some cases, is not necessary when he is a minor without means of his own, and the petition is preferred by his father.

PETITION for divorce, filed by Euclid C. Thayer as father of Owen M. Thayer, to obtain the divorce of the said Owen from his wife, Ardelia M. Thayer, and to have the said marriage declared null and void. The petition, which was signed by the said Euclid C. Thayer, alleged that his son, the said Owen, was, at the time of filing the petition, lunatic and *non compos mentis,* and for about four years then last past, had, without intermission, been of unsound mind, and unable to enter into a valid and legal contract, and that on or about the 19th day of March, 1867, his said son, while thus lunatic and *non compos mentis,* was joined in marriage with the respondent, and concluded with a prayer that a decree of this court might be made, declaring

said marriage null and void, and divorcing his said son from the bond of marriage with the said respondent.

The petition was brought under the provisions of chapter 706 of the Statutes, passed at the May session, 1867, of the General Assembly, which was as follows :—

*It is enacted by the General Assembly as follows:—*

"SECTION 1. Whenever any domiciled inhabitant of this state, who shall have resided therein for the period of one year next before the preferring of the petition hereinafter mentioned, is lunatic or *non compos mentis,* the supreme court shall, for like causes, have like jurisdiction over any petition for divorce, alimony, separate maintenance, or the custody, education and support of the children of persons divorced, or for whom a divorce is sought, preferred by the father, mother, or guardian of said person, lunatic or *non compos mentis,* that it now has in any other petitions for similar relief; provided, that the fact of lunacy shall be set forth in said petition, and shall on the trial thereof be proved to the satisfaction of the court as any other material allegation is required to be.

"SEC. 2. In the trial of any petition preferred under this act by the father, mother or guardian of any person, lunatic, or *non compos mentis,* such father, mother or guardian, and the husband, or wife of such father, mother or guardian shall be deemed competent witnesses, but nothing herein contained shall in any wise be construed as allowing the respondent in any such petition, or the husband or wife of any such respondent, to be a competent witness on the trial thereof."

After the petition was filed, the respondent moved for an allowance to enable her to defend. against it, and also moved that the said Owen M. Thayer be produced in court by the petitioner, at the time of the trial of it. Affidavits were filed in support of these motions, and also counter affidavits, the substance of which are stated in the opinion of the court.

*Payne, for the motions.*

*Markland and Rogers, for the petitioner, contra.*

DURFEE, J. The respondent moves for an allowance for the purpose of enabling her to defend against the petition. The statute, (Rev. St. Ch. 137, § 16,) empowers the court " to make such allowance to the wife out of the estate of the husband, for the purpose of enabling her to prosecute or defend against any such petition for divorce or separate maintenance, in case she has no property of her own, as they may think reasonable and proper."

The respondent makes affidavit that she believes her husband has pecuniary means of his own wherewith to defray the expenses of this suit, but produces no further evidence to that effect. On the other hand, the father of the husband makes affidavit to the effect that her husband is a minor, of eighteen years of age, and is unable to work owing to disease, exemption from labor having been particularly prescribed by the doctors that attend him ; that he is supported by the affiant, and that he has no money or property out of which he can make any allowance or payment to the respondent.

We think, under our statute, that the allowance, if made, should be made out of the estate of the husband, and not by the next friend ; and in the circumstances, as disclosed by the affi· davit last above cited, we do not think an order upon the husband to make his wife any allowance or payment would be reasonable and proper at present.

In *Bouere* v. *Bouere*, 1 Curt. Ec. 566, where the husband being plaintiff, was destitute of property then in possession, and of ability, it was held that the court, though it would not directly require him to furnish his wife with alimony *pendente lite*, would suspend the suit until some provision was made for her. And in *Purcell* v. *Purcell*, 3 Edw. Ch. 194, it was held that if a husband sues for divorce, he must supply money for the support of his wife *pendente lite*, and to help her make defence, where she denies under oath the grounds of the bill, or abandon his suit, and that his poverty would be no excuse.

Without deciding whether these cases furnish a precedent for us under our statute, we will say that we are not, as now advised, prepared to go to the extent of them in this petition ; but,

nevertheless, if the respondent can satisfy us that she has witnesses who can enlighten us in regard to the merits of the petition, whose attendance she cannot procure for the want of means, we will not, for the present at least, proceed to the trial in their absence, but will give her time to obtain means, if she can, unless the petitioner will himself be at the expense of procuring their attendance.

The respondent also moves the court for an order upon the petitioner to produce her husband in court at the time of the trial of the petition.

At present, we will not make such an order. If, upon the trial of the petition, it shall appear to the court that the husband's presence is desirable, the court can then do what it thinks proper and within its competence to do, to the end that he may be produced.

*Motions denied.*

At the trial of the petition, *Payne*, for the respondent, objected to the reading of one of the depositions taken by the petitioner, on the ground that the deponent was himself in court and should be put upon the stand.

THE COURT overruled the objection, and allowed the deposition to be read, on the ground that under the practice in this state, a deposition otherwise admissible in evidence may be used in the trial of a cause, although the deponent is himself in court at the time it is produced, and could be put upon the stand by the parties offering his deposition, if they so desired.

The testimony produced by the petitioner at the trial, to show the insanity of the said Owen M. Thayer at the time of his contracting his marriage with the respondent, consisted of testimony of four medical witnesses and as other witnesses, his father and mother, four relatives, and three witnesses not related to him.

Dr. George Capron and Dr. Isaac Ray were examined as attending or family physicians. The former testified that he had visited Owen M. Thayer professionally on several different occasions. That in 1863 or 1864, he attended him for a severe and

protracted case of chicken pox, attended with tumors, indicating a depraved or unhealthy condition of the general system. That about a year afterwards he visited him again several times on account of suspected mental derangement, and prescribed for him, and after a thorough and careful investigation of the case, was decided in the opinion that he was laboring under mental derangement.

Dr. Ray testified, that he visited the said Owen M. Thayer at the request of his father sometime during the winter of 1865 and 1866, and had a long interview with him for the purpose of ascertaining his mental condition, and found it quite evident that he was laboring under some degree of mental disorder.

The marriage took place on the 19th of March, 1867.

Three medical experts were examined upon the question of the insanity of said Owen, upon a hypothetical case presented to them as the substance of the petitioner's testimony, and testified that in their opinion, supposing the facts to have existed as stated, he was insane and incapable of entering into the marriage contract.

The respondent, after the trial of the case, moved that the decision be deferred until the said Owen M. Thayer should be produced before the court for personal examination. Accompanying the motion was her affidavit, to the effect that her marriage with the said Owen was at his solicitation, and without any fraud or inducement on her part; that she had no knowledge or suspicion or belief that he was insane at the time of said marriage, or at any time, but believed that at the time of his marriage with her he was sane and capable of making a valid marriage contract.

The petitioner, in opposing this motion, produced an affidavit of Dr. Ray, to the effect that he felt quite sure in saying, that for the said Owen M. Thayer to come to Providence and appear in court during the hearing of the cause would be decidedly detrimental to his mental health, which required the utmost freedom from excitement.

*Payne, for the respondent,* made the following points, and cited the following authorities :—

I. The case stands upon the simple charge of insanity, or mental inability to contract a marriage. The testimony is quite consistent with his being able to contract a valid marriage. 1 Bishop on Marriage and Divorce, Book 3, Chap. 8, § 127, and cases cited.

II. It is for the court to inquire, under all the circumstances, as to his capacity ; the testimony of medical experts does not conclude the matter. 1 Bishop on Marriage and Divorce, Book 3, Chap. 8, §135.

III. No decree should be passed affecting his status and rights in the present position of the case. To pass such a decree would be to act upon his most important interests without notice to him, and to decide upon the most important rights of the respondent without the best evidence which the nature of the case will admit of. The court may decline to act until due inquiry in legal form, and proper notice, is made of the question of insanity. I Bishop on Marriage and Divorce, Book 3, Chap. 8, § 128.

IV. In an ordinary petition for divorce, the court, upon the suggestion that one of the parties is insane, will not proceed until a guardian is appointed. *Mansfield* v. *Mansfield*, 13 Mass. 412. And the court should require proof of lunacy, with all the caution as to notice, evidence, &c., required by Rev. Stat. Title XI, Chap. 53, §§ 6 and 7, or at least by Rev. Stat. Title XXIII, Chap. 152, § 4.

V. The court should not adjudge a man insane without notice to him. The only case in which such notice is dispensed with is when the party is already in hospital, upon proper proceedings, and then only upon certificate that such notice would be detrimental. Statutes, Chap. 402.

*Markland and Rogers, for the petitioner*, made the following points, and submitted the following authorities :—

I. As to the value and importance of the testimony of Dr. Capron and Dr. Ray as attending or family physicians, see *Baxter* v. *Abbott*, 7 Gray, 71, 80.

II. Where a witness has had opportunities for knowing and observing the conversation, conduct and manner of the person

whose sanity is in question, it has been held, upon grave consideration, that the witness may depose not only to particular facts, but to his opinion or belief, as to the sanity of the party, formed from such actual observation. *Clary* v. *Clary*, 2 Ired. 78 ; *Wheeler* v. *Alderson*, 3 Hagg. Eccl. 574, 604, 605 ; 1 Greenl. on Evid. 9th ed, p. 606, note 2. The opinion of a non professional witness, as the result of his own observation, accompanied with a statement of the facts which he has observed, is allowed as matter of common knowledge. *Dunham's Appeal*, 27 Conn. 193, and cases cited.

III. The fact of unsoundness of mind does not depend on, nor can it be collected from particular actions like those referred to by the defendant's counsel, but upon the general frame and habit of the mind ; and where all the evidence, as it does here, tends to the conclusion perceived and sworn to, as well by the medical as the non-professional witnesses, that the individual is incapable of forming a just conception of the moral duties and obligations incident to the married state, the marriage must be pronounced void. *Turner* v. *Myers*, 1 Hag. Con. 414 ; *Foster* v. *Means*, 1 Speer's Eq. 569. Each of these cases contains a statement of facts held to evidence such imbecility as disqualifies the party to contract matrimony ; and, upon examination, the court will see that in both those cases the evidence was far less in point of strength than the evidence in the case at bar. See also Bishop on Marriage and Divorce, 4th ed. vol. 1, Book 3, Chap. 13, § 127 ; Ray's Med. Juris. of Insan. 258, 261, §§ 266–269 ; *Attorney General* v. *Parnther*, 3 Bro. Ch. 441, 443. Whatever rights or interests Owen M. Thayer has in the matter of this marriage, they are properly cared for and protected by the person appointed to stand in his place, and the statute authorizing these proceedings is evidently founded upon this view. This act, which substitutes the father, mother, or guardian to the place of the party, is clearly within the well-known power of the General Assembly, to regulate the domestic relations, and its design is not to interfere with vested rights, but to regulate the proceedings in a class of cases of which the court had full jurisdiction, under Revised Statutes, Chap. 137, §§ 1

and 4. The act authorizing these proceedings has been moulded from statutes of other states, which do not require notice to the alleged insane party, or special proceedings in lunacy, before declaring the marriage void. See Revised Statutes of New York, Part 2, Ch. 8, Art. 1, §§ 29, 30, 31; Gen. Stat. of Mass. (1868,) Ch. 107, § 16; Gen. Stat. of New Hampshire, (1867,) Ch. 163, § 7; Gen. Stat. of Vermont, (1863,) Ch. 70, §§ 4, 5, 6, 7; Purdon's Dig. (Pa.) 253, § 10. We believe that, in these states, the validity of these statutes,. or the right to proceed under them, without such notice or commission of lunacy, as is suggested by the defendant's counsel, has never been questioned; and the decisions of the courts in England and this country, show that where a parent or other person is entitled to institute proceedings for nullity of marriage on the ground of insanity, under the authority of a general statute, or otherwise, the insanity is established according to the general modes of proof known to the common law, and that notice to the party alleged to be insane, either because of his interest in the marriage, or because it might be supposed that he was, in some way, a party to the suit, is not deemed necessary before sentence of nullity can be made. See *Turner* v. *Meyers*, 2 Hag. Con. 414, note; *Foster* v. *Means*, 1 Speer's Eq. 569; *True* v. *Ranney*, 1 Foster, (N. H.) 52; *Robertson* v. *Cole*, 12 Texas, 356; *Middleboro* v. *Rochester*, 12 Mass. 363; *Gaines* v. *Relf*, 12 How. (U. S.) 472; *Crump* v. *Morgan*, 3 Ired. Eq. 91, 102; *Clement* v. *Mattison*, 3 Rich. 93; Bishop on Marriage and Divorce, vol. 2, Book 4, Ch. 17, §§ 307, 308. The court has no power to resort to a commission of lunacy to ascertain the insanity of said Owen M. Thayer. Chapter 53 of the Revised Statutes is wholly independent of the chapters relating to divorce, and the proceedings in lunacy under the statute are dependent upon the existence of grounds of application, which may or may not be applicable where a marriage is sought to be annulled on the ground of insanity. Besides, if a commission of lunacy had actually been had, it would not take the place of the evidence now properly before the court, which is what is desired by it on the part of the counsel for the defendant. Bishop on Marriage and Divorce, vol. 2, Book 6, Ch. 33, § 566.

IV. Where a cause for nullity is sufficiently made out, the court has no discretion, but it must proceed to the sentence; and it is of no avail that the defendant is innocent of any intent to do wrong. *Cobb* v. *Garston*, Millward, 529; *Crump* v. *Morgan*, 3 Ired. Eq. 91; *Clement* v. *Mattison*, 3 Rich. 93; *McCarthy* v. *DeCraix*, 2 Cl. & F. 568, note; *Miles* v. *Chilton*, 1 Robertson, 684.

DURFEE, J. Upon the testimony which has been submitted in this cause, we feel constrained to adopt the conclusion, that Owen M. Thayer, when he married the respondent, was laboring under such a malady of the mind as disabled him from contracting a valid marriage. And this state of mind, which had existed for two or three years before the marriage, appears to have continued without material change subsequently, until after the petition was preferred. On the case as it now stands, we think the petition should be granted.

The respondent asks us to defer our decision until Owen M. Thayer, now absent in the state of Maine, shall have been produced before us to be personally examined. If we were assured that he had now recovered, we should not wish to proceed to a decree without some communication with him in regard to the subject of the petition. But the respondent does not base her request upon an alleged recovery, but upon her belief that he has never been otherwise than of sound mind. It is possible, if the respondent failed to detect his insanity during her intercourse with him, that we might not, in an interview with him, discover it. But, even if this were so, we could not venture to follow our own unskilled impressions, so obtained, against the opinions of the accomplished experts produced by the petitioner, corroborated as they are by the opinion of the family physician, and by the testimony showing a change in Owen M. Thayer's character, occurring some years before his marriage, and followed by a course of strange, moody and wayward conduct on his part up to the time of his marriage and afterwards. The petitioner, through his counsel, admits that Owen M. Thayer has recently improved in mind, but says that he is not yet restored. We have no sufficient reason to suspect that the petitioner is

practicing to deceive the court, or that he is abusing the powers confided to him by the statute under which the petition is pre ferred. The affidavit of Dr. Ray expresses his opinion, (given October 10, 1868,) that the boy could not be produced in court without undergoing a dangerous degree of excitement. In this state of the case, while we should be glad to have Owen M. Thayer produced, if it can be done without serious risk, we yet are not prepared to refuse to grant the petition unless he is produced.

The respondent suggests that we ought not to proceed to a decree without notice to Owen M. Thayer, and without first ascertaining the fact of his lunacy by some more formal proceeding with that view, after such notice. The statute authorizing the petition in this form does not direct that such notice shall be given, but simply provides that "the fact of lunacy shall be set forth in said petition, and shall, on the trial thereof, be proved to the satisfaction of the court as any other material allegation is required to be." We do not think the notice proposed is indispensable, unless this statute is unconstitutional, and the counsel for the respondent, although he questions our power to proceed in this suit without notice to Owen M. Thayer, does not refer to any provision or principle of the constitution which will be infringed thereby, and we think of none. Doubtless there may be cases in which we should consider such a notice expedient, but in this case, where the person in whose behalf the petition is preferred is a minor, without means, and under the control of the father, who is himself the petitioner for. him, we think it would be a barren ceremony to have him personally served with notice, unless we should go further and secure him the means of contesting the right of his father to prosecute the petition in his behalf. This we are not prepared to do. Indeed, we think, in the absence of any proof of fraud or unfairness, that the lunatic, or *non compos*, is to be regarded duly represented in the suit by the person who, being authorized by the statute, petitions in his behalf.

We shall, therefore, grant the prayer of the petition. We deem it proper to say, in doing so, that we think the respondent

has conducted the defence as becomes her claim to be the true and lawful wife of Owen M. Thayer, and that, if there be any error in our decision, it will not have occurred by reason of any want of proper efforts on her part to maintain the validity of her marriage with him.

*Petition granted.*